66 So.2d 807 (1953)
LOPEZ et al.
v.
STATE.
Supreme Court of Florida, Special Division A.
July 17, 1953.
Rehearing Denied September 3, 1953.
Atkinson & Atkinson, Tallahassee, for appellants.
Richard W. Ervin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for appellee.
DREW, Justice.
Frank Lopez and Theodore Whitaker, hereafter called Lopez and Whitaker, were jointly informed against in two counts. The first count charged them with conducting a lottery, to-wit, bolita, and the second count with possession of "implements and documents" for conducting a lottery commonly known as bolita. They were convicted on both counts and from a judgment of conviction have perfected this appeal.
*808 Appellants have abandoned their appeal here as to the conviction under the second count inasmuch as such count charges the commission of a misdemeanor and not a felony. Appellate jurisdiction in such case is in the Circuit Court. Article 5, Sections 5 and 11, Constitution of Florida, F.S.A.; Section 924.08, F.S.A.; Byrd v. State, 146 Fla. 686, 1 So.2d 624.
The facts presented to the jury and on which verdicts of guilty were rendered are briefly and accurately outlined in the State's brief as follows:
"At about 11:40 A.M. Sam Klein and Phil Tomberlin, Beverage Department agents, went to Chick's Lounge to make a moonshine investigation. They were accompanied by Emmett Peter, of the Tampa Tribune. The place had a 4-COP license, authorizing the sale of beer, wine and whiskey for consumption on or off the premises. The license was not issued to either of the appellants and neither of them owned the place. However, Lopez admitted that he was running the bar and that he had the place in charge.
"Lopez (one of the appellants) was the bartender. He was standing alongside the bar when Klein and party went in. He walked behind and made a dash for the far end of the bar. Klein thought he might be after a pistol or something and grabbed him. Just before Klein grabbed him, he stuck his hand into a little opening there and mashed a button which Klein later found was part of a buzzer system in the back room. When Klein first saw Lopez, the latter was making a bee line for the end of the bar and Klein was after him. When Klein took hold of him, he had his hand in the crack where the buzzer button was. Klein didn't see him put his finger on the button and push it. Klein assumed that he pushed it.
"Klein, thinking that Lopez was giving someone a signal to destroy the evidence that Klein's party was looking for, told Tomberlin to cover Lopez and Klein ran to the rear where there was a closed door. (It was locked.) In a loud manner, he named himself and said that he was with the State Beverage Department and asked them to open up. He could hear people walking around in there. Nobody answered or opened the door and he kicked it in and entered. A sign over the door to this room said `Private.'
"Inside the room, Klein found Whitaker (the other appellant) and a Sammy Givens. He also found a great many bolita and lottery slips and some money. (In Court, he identified the books and bolita tickets and testified as to the meaning of the number appearing thereon.) The books of tickets were placed in evidence.
"Money was also found under the bar. All of the money totaled over $1400. About 60% of it was in the back room and about 40% from under the bar in front. This money was placed in evidence.
"Klein also found some bolita slips in a box on the bar up front, in a box next to the bar.
"A lot of people were milling around in the back room. Klein arrested the only two he could get his hands on, Whitaker and Givens. Whitaker testified that the door was locked and that `A bunch of us was in there.' `There was at least a dozen or more.'
"When Klein entered the back room, Whitaker was just standing in front of the counter. (In the back room there was a counter arrangement which appeared to be an old bar that had been moved back there.)
"The State's witness, Peter, testified that while Whitaker was in the room, Givens stated that he had come there to buy bolita and in fact had just purchased bolita; that he had placed a dollar on No. 77. Peter said that he didn't hear Givens specify the person from whom he bought it. However, Tomberlin testified unequivocally that Klein, in Whitaker's presence, asked Givens from whom he had purchased the number; that Givens pointed to Whitaker; and that Whitaker did not say anything. On this point, Klein testified to the same effect as Tomberlin. * * *.
"Tomberlin also testified that Lopez was also present when Givens pointed out Whitaker as the man who had sold Givens the bolita number. (Givens was arrested, *809 but couldn't be located for the appellants' trial.)"
In addition to the above facts as narrated in the State's brief it is pertinent to observe that Whitaker testified that the reason for his presence in the room was to cash a government check for $120. He denied that he had anything to do with the operation of the place and also denied that Givens said he bought a bolita ticket from him.
After the State rested its case Whitaker took the stand and testified. He was the only witness who testified for the defense. His testimony, so far as Lopez was concerned, was to the effect that he had seen Lopez on several occasions in Chick's Lounge and that he had at all times seen him tending the bar; that on the day of the arrest Lopez was again bartender and that he was not in the back room when he (Whitaker) entered it. He testified further that the reason he had gone straight to the back room was that an unidentified man on the corner near the place had said he might get his check cashed there.
On the basis of the above testimony the Court made a most unusual and prejudicial ruling that since Whitaker, the codefendant of Lopez, "had testified beneficially for him" in "a dozen regards" that Lopez lost the right to the closing argument to which he would have been entitled under Section 918.09, Florida Statutes 1951, F.S.A. This statute reads in part: "* * * and a defendant offering no testimony in his own behalf, except his own, shall be entitled to the concluding argument before the jury." (Emphasis ours.)
The trial Court went awry in deciding that Whitaker was Lopez's witness, which, as we read the record, was not at all the case. He testified in his own behalf as he had the right to do under the statute and still have the closing argument. Can it be logically contended that if one of two or ten or a hundred defendants being tried decides to take the stand and if the defense of each is essentially the same that that one defendant can preclude the right to closing argument to the other 99 by merely testifying in his own behalf, which testimony may incidentally also bolster the defense of the others? The argument is obviously fallacious, the more so since that same defendant who testifies alone without offering other evidence retains his right to close. Section 918.09, supra.
The above-quoted statute has been previously construed as vesting in a defendant and not his attorney a substantial procedural right, of which he cannot be deprived merely because the attorney also represents a codefendant. Hall v. State, 119 Fla. 38, 160 So. 511; 23 C.J.S., Criminal Law, § 983. The right to the closing argument is a vested one. The divestiture of that right must be strictly a matter for the decision of the accused. If he chooses to waive this statutory procedural right he may do so, but such action must appear from the record.
We are constrained to hold, therefore, that as to the defendant Lopez the judgment must be reversed and a new trial awarded since the trial Court committed error in directing counsel that his closing be restricted to argument for Whitaker.
As to Whitaker we must consider two points raised by appellants, namely, whether the evidence admitted against both defendants was legally obtained and properly received and whether the jury was justified in finding defendants guilty under the rules governing the weight and sufficiency of circumstantial evidence.
This case is different from that of Boynton v. State, Fla., 64 So.2d 536, and Collins v. State, Fla., 65 So.2d 61.
In the Boynton case the officers were attempting to find evidence of the violation of gambling laws and not beverage laws. There was no connection between the bar and the room where gambling paraphernalia was found. The room was not contiguous to the bar. There was no telephone connecting the rooms and no buzzer-system from the back room to the other room. There was no control of any kind shown by the operator of the bar to the back room.
*810 In the Collins case, for about a month the officers had received some information about cuba and bolita and that the appellants were engaged in a lottery. On the very day in question they (the officers) had received such information and that the car would have gambling paraphernalia in it. They followed this car for about a mile and saw Collins drive a foot over the center line of the highway on three occasions. The officers halted Collins on the charge of violating a traffic regulation. Upon doing so, they searched the car and found bolita tickets. There was no pretense that a search warrant had been obtained, or that Collins was apprehended for any other charge than that of violating traffic regulations.
In each of the above cases we held that the searches and arrests were illegal.
In the case at bar, the officers were looking for "moonshine whiskey." They walked into a place, open for business, which had a liquor license. The bartender was violating no law in their presence at that time. After they entered the place of business, the bartender made a dash for the rear of the bar and the officers thought he had gone for a gun. One of the officers scuffled with him and while so doing, the bartender reached under the counter and pushed at something, which later developed to be a push-button where the bartender had placed his hand. This push-button was connected directly with a wire running to a rear room, contiguous to the bar, and which was admittedly under the dominion and control of the operator of the bar. After placing the bartender under arrest, the officers then went to the backroom which was connected to the bar by the buzzer-system. Before entering the back room, they heard a scuffle and much noise and confusion. The officers told who they were and asked to be admitted. They were not admitted and they kicked the door down. The testimony shows that they are still hunting for "moonshine whiskey" and expected to find it in this room, contiguous to and connected with the bar by the buzzer-system. When they entered the room, instead of finding "moonshine whiskey" they saw openly all kinds of gambling paraphernalia and bolita tickets. They seized the gambling paraphernalia which they found. The testimony shows that there were about a dozen people in this room and all escaped except three. The officers had a right to enter this room in search of "moonshine whiskey" which would have been a violation of the beverage law. Having entered the room legally they observed the gambling paraphernalia and the general setup of the room which showed unmistakably that there was a gambling operation going on and that the same was being maintained by someone for the purpose of conducting a lottery and also that whoever was in charge of that room was in possession of implements and documents for conducting a lottery.
As to what constitutes a "place of business" see Simpson v. Goldworm, Fla., 59 So.2d 511, 512, and as to what is "not a place of business" see Boynton v. State, supra.
This case may also be distinguished from the case of Adams v. State, 153 Fla. 68, 13 So.2d 610. In that case the State did not prove that any crime had been committed. Before a confession or admission of guilt may be introduced in evidence, the State must prove corpus delicti, which was not proven in that case. In the case at bar the State sufficiently proved the corpus delicti. After having established the corpus delicti, it was then incumbent upon the State to offer evidence as to who had committed the crime.
Emmett Peter, a newspaper reporter for the Tampa Morning Tribune, testified that when they went into the back room, Whitaker, another man by the name of Sammy Givens and another fellow (unidentified) were there. He also testified that Givens stated that he had gone in there to buy bolita and had just placed a dollar on number 77. Givens did not specify or name the person from whom he bought it, or at least the witness did not hear him so specify.
Tomberlin, a special investigator for the Beverage Department, testified that he was *811 present in the backroom and heard Klein ask Givens if he had purchased any numbers in there. Givens said he had placed a dollar on number 77, and in response to a further question from him, Givens pointed to Whitaker and said, "This man here." In response to the question, "Did Whitaker deny it at any time?" the witness answered, "He didn't say anything."
Klein testified that Givens, in the presence of Whitaker, stated that he had bought bolita from Whitaker. Later Klein said that Givens did not name Whitaker but Givens said in Whitaker's presence, "I didn't know what his name was at the time but that was the man." The record does not show that the person of Whitaker was searched.
The gambling paraphernalia seized by the officers, under the facts shown in this case, was legally seized. The establishment of the corpus delicti and the connection of the defendant, Whitaker, with the place of business and, therefore, in possession of implements and documents for conducting a lottery and of actually conducting a lottery were jury questions. Although the evidence as to Whitaker was weak, the conviction will not be set aside on appeal. Whitaker was found in a room in which all the indications of a "live" lottery operation were found. There is the recital of testimony that he had sold a ticket to Givens. Givens was not produced and did not testify. While we recognize the rule that circumstantial evidence in criminal cases must not only be consistent with the guilt of the accused, but also must be inconsistent with any other hypothesis and must be of a conclusive character, pointing directly and unerringly to accused's guilt beyond a reasonable doubt, we hold the evidence here measured up to that standard.
For the reasons pointed out the judgment is affirmed as to the defendant Whitaker, and reversed for a new trial as to the defendant Lopez.
Affirmed in part and reversed in part.
ROBERTS, C.J., MATHEWS, J., and PARKS, Associate Justice, concur.